Kunkle, J.
Defendant in error, The Austin-Western Road Machinery Company, brought suit in the court of common pleas to recover judgment against plaintiff in error, Mad River Township, Clark county, in the sum of $2400, with interest, upon a contract for the purchase of a road roller.
Such contract was entered into August 1, 1913, and is evidenced by two promissory notes of $1200 each, one payable March 1, 1914, and the other March 1, 1915, both bearing interest.
*299 The notes were signed A. H. Smith, trustee; J. H. Lindermuth, trustee, and S. E. Dunevant, trustee.
The petition among other things contains the following averments, viz.:
“The said trustees who, for said township, so purchased said road roller and executed the so-called notes as aforesaid, and also their successors, have for said township, retained and used and have continuously since said purchase, held and enjoyed and still hold and enjoy the possession of the same; and they have, continuously since, neglected and refused, on demand, to pay for said road roller the said $2400, with interest as aforesaid, or any part thereof, though there has been ample money in the treasury of said township belonging to it and to the credit of its several funds, not otherwise appropriated, applicable to the payment thereof; and said trustees have neglected and refused, on demand, to apply the same, or any part of it, to pay said indebtedness.
“Prior to the 1st day of August, 1913, there had been taxes levied by the trustees of said township in and for the year 1913 which weré thereafter collected, and there was, also, on said last-named date and since, in process of collection, moneys arising from taxes and from other sources, belonging to said township then in or thereafter came into said treasury to the credit of its several funds, not otherwise appropriated, and sufficient to pay plaintiff for said road roller, purchased as aforesaid, and, on demand the said trustees of said township have refused and neglected, and will still refuse and *300 neglect to apply the same to pay, in whole or in part, the said indebtedness to plaintiff.
“The plaintiff further says that since August 1, 1913, the trustees of said township have contracted other indebtedness on its behalf and they have appropriated money and caused the same to be paid, from time to time, from funds belonging to and in the treasury of said township, applicable as aforesaid and sufficient to pay the said indebtedness to plaintiff in full; and taxes were levied and collected for the year 1913, for the express purpose of paying for said road roller, and the same, thus levied and collected, was paid into the treasury of said township as follows: $791.49, February —, 1914, and $790.62, September —, 1914, an aggregate sum of $1582.11, all of which has been and is now withheld by said trustees from being applied toward paying plaintiff for said road roller. The said aggregate sum so levied and collected is still in said township treasury unappropriated subject to be used to' pay the said indebtedness to plaintiff unless the same, or part thereof, has been diverted by said trustees to other uses.”
To the petition, defendant below filed a general demurrer, which was overruled by the trial court.
Defendant thereupon filed an answer in which it admitted that it was a political subdivision of the county and state, as averred in the petition; that A. H. Smith, J. H. Lindermuth and S. E. Dunevant were trustees of said township in 1912 and 1913; and that said Smith, Lindermuth and Dunevant signed an alleged contract as averred in the petition and gave the notes as set forth in the petition.
*301 The answer also contained the following averments :
“Defendant admits that prior to August 1, 1913, there had been levied by the trustees of the said township in and for the year 1913, certain taxes to be collected in said years 1913 and 1914, to be used for the payment of said notes, and that there was collected thereon the sum of $1582.11, and that the same is now on deposit, unappropriated, subject to be used by the trustees of the said township.-
“Defendant further says that at the time of making the alleged contract, as set forth in the plaintiff’s petition, the said trustees were not in session and that no resolution had been passed authorizing said alleged contract to be made; and that the said alleged contract was signed by the several persons named at their respective homes, they not having been authorized so to do at any regular meeting of said board of trustees of said township.
“Defendant says further that at the time of entering into said alleged contract there was only twenty-nine dollars and thirty-eight cents in the hands of the treasurer of said township, unappropriated, and that in order to pay for said roller under said alleged contract, the said A. H. Smith, J. H. Lindermuth and S. E. Dunevant, gave the two notes as set forth in plaintiff’s petition at the dates 'named on said notes, and said notes were accepted by said Austin-West era Company, Limited, as full payment of said account of twenty-four hundred dollars, as claimed by it against said Mad River township; that in order to pay said notes said trustees levied a special assessment known as The Road Repairing Machinery Fund, and that if said *302 contract was legal or said trustees had the legal right to execute said notes, that amount might be applied to the payment thereof.
“Defendant says that said road roller was used for a period of about thirty days in the fall of the year 1913, but that the same, since said date, has been stored in the township house of said township, and not used by the defendant or any other person or persons, and that said road roller is now and has been since 1913, there subject to the order of the said plaintiff.
“Defendant further says that there has not been sufficient money in the hands of the township treasurer, unappropriated, which could be used for the purpose of paying said notes, given for said road roller, at any time since said notes were given.
“Defendant further says that at the time of entering into said alleged contract between the plaintiff and the defendant, the clerk of said township did not first certify that the money required for the payment of such obligation or appropriated was in the treasury to the credit of the fund from which it was to be drawn, or had been levied or placed on the duplicate, and in process of collection and not appropriated for any other purpose.
“Defendant denies each and every other allegation in said petition contained and not herein specifically admitted to be true.”
Plaintiff below filed a general demurrer to the answer, which demurrer was sustained by the trial court.
Defendant below declining to plead further, the case was submitted to the court upon the petition and its exhibits, and' judgment was rendered in *303 favor of the plaintiff in the sum of $2708, being the contract price for the sale of the said road roller, together with interest thereon. From such judgment plaintiff in error prosecutes error to this court.
The principal question presented both by the demurrer to the petition and the demurrer to the answer relates to the applicability of Section 5660, General Code, to contracts of this nature.
Section 5660, General Code, is as follows:
“The commissioners of a county, the trustees of a township and the board of education of a school district, shall not enter into any contract, agreement or obligation, involving the expenditure of money, or pass any resolution or order for the appropriation or expenditure of money, unless the auditor or clerk thereof, respectively, first certifies that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn, or has been levied and placed on the duplicate, and in process of collection and not appropriated for any other purpose; money to be derived from lawfully authorized bonds sold and in process of delivery shall, for the purpose of this section, be deemed in the treasury and in the appropriate fund. Such certificate shall be filed and forthwith recorded, and the sums so certified shall not thereafter be considered unappropriated until the county, township or board of education, is fully discharged from the contract, agreement or obligation, or as long as the order or resolution is in force.”
Plaintiff in error contends that the provisions of Section 5660 apply to the contract in question, and *304 that the absence of an averment in the petition that the certificate provided for in such section has been made, renders the petition subject to demurrer.
This question is also raised by an express averment in the answer, admitted by the demurrer thereto, to the effect that no such certificate was made.
Defendant in error claims that such certificate is not necessary for the following reasons:
1. Because Section 3275, General Code, supersedes Section 5660, General Code, and authorizes the contract in question.
2. Because the contract in question has been executed by the delivery, retention and use of the said road roller.
Section 3275, General Code, reads as follows:
“The trustees may purchase such number of plows and scrapers and any other road building or road repairing machinery they deem necessary, for the use of the township, which shall be used exclusively for that purpose. The cost and expenses thereof .shall be paid on the order of the trustees, from moneys in the township treasury not otherwise appropriated. They shall take possession of such plows, scrapers or machinery, or may authorize an employe of the township or other person, to take charge thereof, who shall take care of and preserve them when not in use.”
The questions raised by the demurrer to the petition and the demurrer to the answer are both interesting and important.
In arriving at a conclusion we have been greatly aided by the exhaustive briefs which have been filed by counsel.
*305 We shall not attempt to review or distinguish all of the authorities so cited, but will merely refer briefly to a few of the Ohio decisions bearing upon the questions involved.
Section 5660, General Code, is the outgrowth of what is commonly known as the Burns law, which law was originally applicable only to municipal corporations.
The legislature in adopting Section 5660, General Code, evidently intended to apply the general provisions of the Burns law to the commissioners of counties, the trustees of townships and the boards of education of school districts, and this section would, therefore, be subject to the same general rules of construction as have been applied to the Burns law, which, as above stated, applied only to municipal corporations.
The Burns law has been held to be remedial legislation, intended to restrict expenditures to funds actually available at the time a contract is made, for the purpose of preventing the creation of floating indebtedness.
It was found by experience that the purpose of the Burns law could be best subserved by a strict enforcement thereof.
Judge Burket in the case of The City of Weliston v. Morgan, 65 Ohio St., at page 229, says:
“A strict adherence to the provisions of the restrictive statutes of the state will be for the general good; and it devolves upon those who deal with public officers, to see for themselves that the statutes have been complied with.”
Paragraphs three and four of the syllabus in the above case are as follows:
*306 “3. To state a good cause of action against a municipality in matters ex contractu the petition must declare upon a contract, agreement, obligation or appropriation made and entered into according to statute. A petition on an account merely, or quantum meruit, in such cases, is not sufficient.
“4. Persons dealing with officers of municipalities must ascertain for themselves and at their own peril that the provisions of the statutes applicable to the making of the contract, agreement, obligation or appropriation have been complied with.”
See also reasoning of Judge Burket in the case of Buchanan Bridge Co. v. Campbell et al., Com’rs., 60 Ohio St., 406, at page 425.
Judge Bradbury in discussing such remedial statutes in the case of the City of Lancaster v. Miller, 58 Ohio St., 558, says at page 575:
“The evils against which these restrictive statutes are directed are municipal extravagance and the negligence and indifference of municipal officers. They were designed for the protection of municipal taxpayers generally, as well as to guard against excessive special assessments against property to pay for local improvements. The mischief arising from municipal prodigality and the growth of municipal debts that attended thereon, called loudly for an efficient remedy. These restrictive statutes are the answer to that call. They embody that principle of sound public policy which seeks to enforce economy in the administration of public affairs. The judicial tribunals of the state should administer these laws so as to advance the purpose thus sought to be accomplished. Contracts made *307 in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.
“The corporation should not be estopped by the acts of its officers to set up these statutes in defense to contracts made in disregard of them. It would be idle to enact those statutes, and afterward permit their practical abrogation by neglect or other misconduct of the officers of the municipality. If such effect should be given to such acts of municipal officers it would defeat the operation of the statutes. The strict enforcement of these provisions may occasionally cause instances of injustice; it is possible that municipal bodies may secure benefits under a contract thus declared void and refuse to make satisfaction.”
As stated above, we think the general rules of construction which have been applied to what is known as the Burns law should be applied in construing Section 5660.
Section 5660, General Code, is general in its terms and therefore applies to all contracts made by township trustees, unless such contracts are expressly or by fair inference excepted therefrom by some other statutory provision.
In the case of Comstock et al. v. The Incorporated Village of Nelsonville et al., 61 Ohio St., 288, the first paragraph of the syllabus is as follows:
“Unless a valid exception is made by some provision of statute, Section 2702, Revised Statutes, is applicable to so much of the cost and expense of a *308 street improvement as is to be paid by the municipality out of funds arising from a levy on the general tax list.”
Does Section 3275, General Code, exempt the contract in question from the provisions of Section 5660, General Code?
If Section 3275, General Code, is construed as an enabling statute authorizing the township trustees to purchase road machinery and pay for the same out of moneys in the township treasury not otherwise appropriated, it is then clearly not inconsistent with the restrictions of Section 5660, General Code.
It is claimed, however, by defendant in error, that the provisions of Section 3275, to the effect that the trustees may purchase such machinery and pay for the same from moneys in the township treasury not otherwise appropriated, are inconsistent with the provisions of Section 5660, and therefore evidence an intention upon the part of the legislature to exempt contracts such as the one in question from the provisions of Section 5660, General Code.
Section 5660 affects the validity of all contracts, and was intended to prevent the official bodies therein enumerated from contracting indebtedness in excess of the funds then on hand or in process of collection.
The mere power conferred in general terms to contract should not, we think, be construed as an exemption from the provisions of Section 5660, General Code, but should be construed in harmony with such section.
*309 Various municipal statutes confer power, in general terms, upon different municipal officers to make contracts, but such statutes have not been held to be inconsistent with the limitations of the Burns law, and we think the same construction should be placed upon Section 5660, General Code.
If there is any inconsistency between Section 3275 and Section 5660, General Code, then we think the provisions of Section 5660 should govern, as they represent the latest expression of the legislature upon the subject.
Section 5660 was reenacted by the legislature as late as 1910, whereas the section which now constitutes 3275, General Code, was enacted in 1906.
While we have not thoroughly examined the statutes for exemptions from the provisions of Section 5660, yet we recall that Sections 2413, 2435-1 and 2436 expressly exempt certain contracts of the commissioners from the provisions of Section 5660.
In respect to the contention of defendant in error that the contract in question has been executed, the doctrine is well settled in this state that such execution even if admitted is no protection where the suit is brought upon the contract itself. In the case of Comstock et al. v. The Incorporated Village of Nelsonville et al., 61 Ohio St., 288, the third paragraph of the syllabus is as follows:
“Whether the certificate required by said Section 2702 has been filed and recorded or not, must be ascertained by each contractor for himself at his peril. In the absence of such certificate, when required, no liability arises against the municipality, *310 even though the contractor has fully performed his contract.”
The same principle is announced in Buchanan Bridge Co. v. Campbell et al., Com’rs., 60 Ohio St., 406.
In view of the rule so announced it does not become important to consider the averment of the answer to the effect that the road roller in question is now and has been since 1913 subject to the order of defendant in error.
The answer avers that at the time of entering into the contract there was only $29.38 in the hands of the treasurer of said township unappropriated, and that taxes had been levied and were in process of collection to the amount of $1582.11.
The. contract called for $2400, with interest.
If Section 3275, General Code, is construed as a limitation, it would follow that the amount of the contract price was neither in the treasury unappropriated nor in process of collection, and the answer would, therefore, be good against a general demurrer.
The petition does not aver that the entire amount required to meet this contract was either in the treasury or in process of collection when the contract was entered into.
Commencing at the last paragraph of page 2 of the petition there is this averment:
“Prior to the 1st day of August, 1913, there had been taxes levied by the trustees of said township in and for the year 1913 which were thereafter collected, and there was, also, on said last-named date and since, in process of collection, moneys arising from taxes and from other sources, belonging to *311 said township then in or thereafter came into said treasury to the credit of its several funds, not otherwise appropriated, and sufficient to pay plaintiff for said road roller.”
This averment of the petition not only refers to taxes levied prior to August 1, 1913, but also includes those since levied, and the averment must, therefore, be read as of the date of the filing of the petition, namely, May, 1915, and not as of the date August, 1913, when the contract was entered into.
We think the absence of a certificate of the clerk is fatal to the cause of action of the plaintiff below and that the demurrer to the petition should have been sustained.
We think the decision of the supreme court in the case of State, ex rel. Hunt, Pros. Atty., v. Fronizer et al., 77 Ohio St., 7, which case defendant in error relies upon to some extent, is not in conflict, but in harmony, with the conclusions herein reached.
On page 18 the court clearly reaffirms the invalidity of a contract made in disregard of the statutes and merely holds that the court will leave the parties where it found them. In that case the prosecuting attorney attempted to recover the contract price from the bridge company. The court refused to grant any relief. In the present case defendant in error relies upon the contract, and upon the failure to show that the contract was a valid one the court would be required to leavé the parties where it finds them.
In view of the conclusions reached as to the necessity of the clerk’s certificate, we have not found it necessary to consider whether a contract *312 made separately by the trustees, instead of at a meeting of the trustees, would be valid.
The judgment of the lower court both in sustaining the demurrer to the answer and in overruling the demurrer to the petition will be reversed.
Unless plaintiff below can amend its petition, it would follow that this court should render the judgment which the lower court ought to have rendered, namely, that the petition of plaintiff below be dismissed.

Judgment reversed.

Ferneding and Allread, JJ., concur.